**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| PATRICIA LEE and BANDY LEE, <br><br> Plaintiffs, <br><br> v. <br><br> JANE GALLINA-MECCA et al., <br><br> Defendants. | Civil Action No. 23-06495 (JKS)(LDW) <br><br> **OPINION** <br><br> February 10, 2025 |

**SEMPER**, District Judge.

The current matter comes before the Court on separate motions to dismiss the Second Amended Complaint ("SAC") filed by Defendant Jane Gallina-Mecca ("Judge Gallina-Mecca") (ECF 33) and Defendant Evelyn Nissirios ("Nissirios") (ECF 34) pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). Plaintiffs opposed Defendants' respective motions. (ECF 36; ECF 37.) Judge Gallina-Mecca and Nissirios each filed briefs in reply. (ECF 39; ECF 42.) The Court reviewed all submissions[1] in support and in opposition and decided the motions without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons stated below, Defendants' respective motions are **GRANTED.**

---

[1] The facts and procedural history are taken from the Second Amended Complaint ("SAC"), Defendants' respective briefs in support of each motion to dismiss (ECF 34-1, "Nissirios MTD"; ECF 33-1, "G.M. MTD"), Plaintiffs' respective briefs in opposition (ECF 36, Pl. Opp.; ECF 37; Pl. Opp.), and the respective replies in support of each motion. (ECF 42, "Nissirios Rep."; ECF 39, "Def. G.M. Rep.") The Court also relies on documents integral to or relied upon by the Amended Complaint and the public record. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

I.  BACKGROUND[2]

Plaintiffs assert a myriad of allegations against Judge Gallina-Mecca, a Superior Court Judge in New Jersey, Nissirios, *guardian ad litem* ("GAL"), and the principal of the minor children's elementary school, Michael Piecenza ("Piacenza").

The allegations revolve around a child custody proceeding, docketed as BER-FM-02-754-21, involving the minor children of Plaintiff, Patricia Lee. (*See* ECF 30, SAC ¶ 13.) Plaintiffs allege Orders entered by Judge Gallina-Mecca in BER-FM-02-754-21 were unlawful and violated Plaintiffs' rights in numerous ways, including but not limited to prohibiting Plaintiffs from communicating with DCPP regarding the minors, reporting to the Child Abuse Hotline on behalf of the minors, and communicating with the minors' pediatricians and caregivers. (*Id.* ¶¶ 5-7.) Plaintiffs further allege that Judge Gallina-Mecca issued an arbitrary and illegal order involving the custody of the minor children on November 12, 2021. (*Id.* ¶¶ 16-18.) The SAC also alleges Judge Gallina-Mecca orchestrated the arrest and prosecution of Plaintiffs on June 22, 2022, and September 29, 2022. (*Id.* ¶¶ 16, 46-48, 56-58, 101-02.) Further, Plaintiffs allege that Judge Gallina-Mecca violated Plaintiffs' First Amendment Right to Free Speech by ordering the removal of publications from the Ms. Magazine in the summer 2023. (*Id.* ¶ 62.)

Plaintiffs allege further that Judge Gallina-Mecca colluded with Evelyn F. Nissirios and Michael Piacenza to deny the civil rights of Plaintiff and her minor children. (*Id.* ¶¶ 71, 80-82.) As outlined in the SAC, Nissirios is alleged to have: (i) barred the Minor Children from seeing psychiatrists recommended by Plaintiffs, instead allowing them to be seen by certain other therapists; (ii) thwarted Plaintiffs' attempts to report on the Minor Children's welfare, (iii)

---

[2] The allegations in the SAC must be accepted as true solely for purposes of these Motions, except where conclusory and/or implausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

improperly transferred custody of the Minor Children to their father in an improper ex parte hearing, resulting in an illegal custody order; (iv) refused to provide Plaintiffs with transcripts and court materials from the ex parte hearing; (v) did not consider Plaintiffs' expert reports in the Family Court Matter; (vi) instigated the arrest of Plaintiffs without probable cause; and (vii) enforced an unconstitutional judicial Order suppressing Plaintiffs' First Amendment free speech rights. (*Id.* ¶¶ 21-22, 26, 33, 36-37, 40-41.)

On June 25, 2024, Plaintiffs filed the SAC against Gallina-Mecca, Nissirios, and Piacenza. Judge Gallina-Mecca and Nissirios each filed their respective motions to dismiss on July 23, 2024. On September 27, 2024, Piacenza filed his motion to dismiss the SAC.[3]

## II.   STANDARD OF REVIEW

### a.   Federal Rule of Civil Procedure 12(b)(1)

"When a motion under Rule 12 is based on more than one ground, the court should consider the 12(b)(1) challenge first because if it must dismiss the complaint for lack of subject matter jurisdiction, all other defenses and objections become moot." *Dickerson v. Bank of Am., N.A.*, No. 12-03922, 2013 WL 1163483, at *1 (D.N.J. Mar. 19, 2013) (citing *In re Corestates Trust Fee Litig.*, 837 F. Supp. 104, 105 (E.D. Pa. 1993)). In considering dismissal for lack of subject matter jurisdiction, a district court's focus is not on whether the factual allegations entitle a plaintiff to relief, but rather on whether the court has jurisdiction to hear the claim and grant relief. *Maertin v. Armstrong World Indus., Inc.*, 241 F. Supp. 2d 434, 445 (D.N.J. 2002).

Rule 12(b)(1) motions may challenge subject matter jurisdiction based upon the face of the complaint or its underlying facts. *Common Cause of Pa. v. Pennsylvania*, 558 F.3d 249, 257 (3d Cir. 2009); *Pittman v. Metuchen Police Dept.*, No. 08–2373, 2009 WL 3207854, at *1 (D.N.J.

---

[3] The Court does not reach the merits of Mr. Piacenza's motion at this time. The Court will render a decision with respect to Mr. Piacenza's motion in a separate opinion and order.

3

Sept. 29, 2009) (citing James Wm. Moore, 2 Moore's Federal Practice § 12.30[4] (3d ed. 2007)). A facial attack questions the sufficiency of the pleading and requires the trial court to accept the allegations in the complaint as true. *Common Cause of Pa.*, 558 F.3d at 257; *Pittman*, 2009 WL 3207854, at *1. A factual attack, by contrast, calls upon the court to weigh the evidence. *Pittman*, 2009 WL 3207854, at *1. Here, Judge Gallina-Mecca asserts the defense of sovereign immunity under the Eleventh Amendment based on the pleadings, thereby raising a facial attack.[4] *See Perez v. New Jersey*, No. 14-4610, 2015 WL 4394229, at *3 (D.N.J. July 15, 2015) ("[T]he State Defendants' motion asserts the defense of sovereign immunity based on the facts as pleaded in the Second Amended Complaint and is thus a facial attack."). Accordingly, "the Court must consider the allegations of the complaint as true," much like a Rule 12(b)(6) motion to dismiss. *Bd. of Trs. of Trucking Emps. of N. Jersey Welfare Fund, Inc. v. Caliber Auto Transfer, Inc.*, No. 09-6447, 2010 WL 2521091, at *8 (D.N.J. June 11, 2010) (quoting *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 (3d Cir. 2006)).

### b. Federal Rule of Civil Procedure 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a defendant to move to dismiss a count for "failure to state a claim upon which relief can be granted[.]" To withstand a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is plausible on its face when there is enough factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the plausibility standard "does not impose a probability

---

[4] While Judge Gallina-Mecca raises her Eleventh Amendment sovereign immunity defense under Rule 12(b)(1), a court can analyze this defense under Rule 12(b)(1) or Rule 12(b)(6). *See Carter v. City of Philadelphia*, 181 F.3d 339, 343 (3d Cir. 1999).

requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his] claims." *Id.* at 789.

In evaluating the sufficiency of a complaint, a district court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). A court, however, is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007). If, after viewing the allegations in the complaint in the light most favorable to the plaintiff, it appears that no relief could be granted under any set of facts consistent with the allegations, a court may dismiss the complaint for failure to state a claim. *DeFazio v. Leading Edge Recovery Sols.*, 2010 WL 5146765, at *1 (D.N.J. Dec. 13, 2010). In addition to these pleading rules, a complaint must satisfy Federal Rule of Civil Procedure 8(a), which states that a complaint must contain:

> A pleading that states a claim for relief must contain[:] (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Because Plaintiffs are proceeding *pro se*, the Court construes the pleadings liberally and holds them to a less stringent standard than papers filed by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). The Court, however, need not "credit a *pro se* plaintiff's 'bald assertions' or 'legal conclusions.'" *Grohs v. Yatauro*, 984 F. Supp. 2d 273, 282 (D.N.J. 2013) (quoting *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)).

## III.   ANALYSIS

Plaintiffs' claims arise under 42 U.S.C. § 1983. Section 1983 does not provide substantive rights; rather, Section 1983 provides a vehicle for vindicating violations of other federal rights. *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (citation omitted). To state a Section 1983 claim, a plaintiff must demonstrate that (1) a person deprived her of a right secured by the Constitution or federal law; and (2) the person who deprived her of that right acted under color of state law. *Velez v. Fuentes*, No. 15-6939, 2016 WL 4107689, at *2 (D.N.J. July 29, 2016) (citation omitted).

Furthermore, Plaintiffs assert claims pursuant to the statutory provisions in Section 1985(2), which contain multiple distinct clauses pursuant to which a plaintiff may allege unlawful conspiratorial conduct. "[C]laims under Section 1985 must be pled with specificity in order to withstand a motion to dismiss. Broad, conclusory allegations, unsupported by specific facts implicating specific defendants are insufficient to state a claim upon which relief can be granted." *Sharifi v. Twp. of East Windsor*, No. 21-18097, 2023 WL 2182003, at *6-7 (D.N.J. Feb. 23, 2023) (quoting *Handelman v. New Jersey*, No. 16-2325, 2016 WL 3691976, at *11 (D.N.J. Jul. 12, 2016)).

### A. Eleventh Amendment Sovereign Immunity (Judge Gallina-Mecca)

Judge Gallina-Mecca argues that this Court lacks subject matter jurisdiction because Judge Gallina-Mecca is entitled to Eleventh Amendment immunity.[5] (ECF 33-1, Def. GM. MTD. at 12-15.)

A federal court generally does not have jurisdiction over suits against "a state or state agency from a suit brought in federal court by one of its own citizens regardless of the relief sought,

---

[5] A motion to dismiss based upon sovereign immunity is properly brought pursuant to Rule 12(b)(1) because sovereign immunity implicates the Court's subject matter jurisdiction. *See Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 693 n.2 (3d Cir. 1996) ("[T]he Eleventh Amendment is a jurisdictional bar which deprives federal courts of subject matter jurisdiction.").

unless Congress specifically abrogates the state's immunity or the state waives its own immunity." *Thorpe v. New Jersey*, 246 F. App'x 86, 87 (3d Cir. 2007) (citations omitted). Accordingly, Eleventh Amendment sovereign immunity protects non-consenting states from suits brought in federal court by private citizens seeking monetary damages. *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100-01 (1984). The immunity extends beyond the State and immunizes state agencies, departments, and officials, provided they constitute "arm[s] of the state." *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *see also Haybarger v. Lawrence Cty. Adult Prob. & Parole*, 551 F.3d 193, 198 (3d Cir. 2008) (finding that the shield of Eleventh Amendment sovereign immunity extends to "subunits of the State").

Specifically, the Eleventh Amendment provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Courts have interpreted the Eleventh Amendment as affirming "the fundamental principle of sovereign immunity" as a limit on a federal court's authority. *Pennhurst*, 465 U.S. at 98. Accordingly, the Eleventh Amendment bars all private suits against non-consenting states in federal court. *Lombardo v. Pa., Dep't of Pub. Welfare*, 540 F.3d 190, 194 (3d Cir. 2008) (citing *Hans v. Louisiana,* 134 U.S. 1, 10 (1890)); *see Pennhurst*, 465 U.S. at 101. The bar extends to state employees acting in their official capacities, in addition to agencies and departments of the state. *See Pennhurst*, 465 U.S. at 101.

Although there are three exceptions to sovereign immunity, none apply in this case. First, "Congress may abrogate state sovereign immunity in the exercise of its power to enforce the Fourteenth Amendment." *Antonelli v. New Jersey*, 310 F. Supp. 2d 700, 713 (D.N.J. 2004). It is clear, however, that Congress did not abrogate states' sovereign immunity in enacting any of the

7

statutes raised here. *See Bennett v. City of Atlantic City*, 288 F. Supp. 2d 675, 683-84 (D.N.J. 2003) (explaining that Congress did not abrogate state immunity when enacting 42 U.S.C. §§ 1981, 1983 or 1985); *Tucker v. Sebelius*, No. 12-5900, 2013 WL 6054552, at *7 (D.N.J. Nov. 15, 2013) (stating that the doctrine of sovereign immunity barred the plaintiff's § 1986 claims).

Second, a state may waive sovereign immunity by consenting to suit in federal court by "invok[ing] [its] jurisdiction by bringing suit," or by making "a clear declaration that it intends to submit itself to [federal court] jurisdiction." *MCI Telecomm. Corp. v. Bell Atl. Pa.*, 271 F.3d 491, 503-04 (3d Cir. 2001). Plaintiffs do not argue, and there is no indication that Judge Gallina-Mecca waived her sovereign immunity here.

Under the third exception, the *Ex Parte Young* doctrine, "individual state officers can be sued in their individual capacities for prospective injunctive and declaratory relief to end continuing or ongoing violations of federal law."[6] *MCI Telecomm. Corp.*, 271 F.3d at 506 (citing *Ex Parte Young*, 209 U.S. 123, 159-60 (1908)). In Plaintiffs' SAC they request relief for "declaratory judgment stating that Judge Gallina-Meccas' actions violated the law as set forth above, and therefore that any orders or directives proceeding from these actions are thus devoid of any legal force or effect." (*See* ECF 30, Pl. Br. at 18.) However, Plaintiffs have failed to allege an ongoing constitutional violation that would allow for the *Ex Parte Young* exception to apply.[7] Furthermore, in *Allen v. Debello*, 861 F.3d 433 (3d Cir. 2017), the Court found that when judicial defendants have acted in an adjudicatory capacity and not in an enforcement capacity, they are not

---

[6] The theory of the *Ex Parte Young* doctrine is that a claim for prospective relief for an ongoing violation of federal law is "not an action against the state because the [alleged violation] would strip the officer of his official authority." *MCI Telecomm. Corp.*, 271 F.3d at 506 (citing *Pennhurst,* 465 U.S. at 103).

[7] The *Ex Parte Young* theory is that a state officer lacks the authority to enforce an unconstitutional state enactment. *Fehr v. Callahan*, No. 21-11146, 2023 WL 3180314, at *5-6 (D.N.J. Apr. 29, 2023). Plaintiffs can bring suit against state officers, but the remedies are limited to those that are "designed to end a continuing violation of federal law." *Id*. (quoting *Green v. Mansour*, 474 U.S. 64, 68 (1985)).

proper defendants in 42 U.S.C. § 1983 litigation. *Id*. at 442.[8] Finally, the Supreme Court has explicitly stated that Section 1983 does not override a state's Eleventh Amendment sovereign immunity. *Quern v. Jordan*, 440 U.S. 332, 345 (1979).

Accordingly, because Judge Gallina-Mecca in her official capacity as a New Jersey Superior Court Judge is considered an "arm" of the State, and no exception applies, she is entitled to Eleventh Amendment immunity in this matter.[9] Therefore, Judge Gallina-Mecca, in her official capacity, is immune from claims asserted in this suit and is dismissed pursuant to Rule 12(b)(1).

### B. Judicial Immunity (Defendant Judge Gallina-Mecca)

Judge Gallina-Mecca also argues that Plaintiffs' claims against her must be dismissed pursuant to the doctrine of judicial immunity. (Def. GM. Br. at 16-22.)

"A judicial officer in the performance of his duties has absolute immunity from suit and will not be liable for his judicial acts." *Capogrosso v. Supreme Court of N.J.*, 588 F.3d 180, 184 (3d Cir. 2009) (quoting *Azubuko v. Royal*, 443 F.3d 302, 303 (3d Cir. 2006)). "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted 'in the clear absence of all jurisdiction.'" *Capogrosso*, 588 F.3d at 184 (citations omitted).

---

[8] The best-interests-of-the-child standard statute gives state court judges broad discretion to determine a custody situation. State court judges also have broad discretion to decide motions on the papers under New Jersey Supreme Court and Appellate Division precedent. *Allen*, 861 F.3d at 442.

[9] In addition, "[t]o state a claim under [42 U.S.C.] § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by *a person* acting under the color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (emphasis added). Neither a state nor entity that is an arm of the state for Eleventh Amendment purposes qualify as a "person" under Section 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983."); *N.J. Chinese Cmty. Ctr. v. McAleer*, No. 21-8320, 2022 WL 3403297, at *7 (D.N.J. Aug. 15, 2022) (citation omitted) ("[B]ecause a state is not a 'person' within the meaning of section 1983 . . . it follows that the State of New Jersey cannot be held liable as a 'person' under any of these sections of the Civil Rights Act."). Thus, Plaintiff's Section 1983 claims are not proper for this additional reason.

The Supreme Court has, however, identified two exceptions to this rule. "First, a judge is not immune from liability for non-judicial actions, *i.e.*, actions not taken in the judge's judicial capacity." *Mireles v. Waco*, 502 U.S. 9, 11 (1991). "Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Id.* at 12. To determine whether an act is judicial, courts look to "the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity." *Stump v. Sparkman*, 435 U.S. 349, 362 (1978).

Here, Plaintiffs contend Judge Gallina-Mecca is not immune based upon the non-judicial actions pled in the SAC. (ECF 37, Pl. Br. at 10-12.) Judge Gallina-Mecca argues that "where Plaintiffs attempt to base[] their claims on non-judicial conduct attributed to Judge Gallina-Mecca, their allegations fail to meet the *Iqbal/Twombly* pleading standard." (ECF 39. Def. GM. Rep. Br. at 2.) This Court agrees with Judge Gallina-Mecca.

Plaintiffs allege that Judge Gallina-Mecca: (a) colluded with the court-appointed Guardian Ad Litem (GAL), Defendant Evelyn Nissirios, to bar Plaintiff Patricia Lee from having access to the children, (*see* SAC ¶ 21); (b) barred the children from seeing a psychiatrist (*see id*. ¶ 22); (c) "intervened" in child welfare proceedings to prevent an investigation of the children's welfare by Department of Child Protection & Permanency ("DCPP") and to conceal evidence of their mistreatment by the father by causing the DCPP to cancel an interview with Plaintiff Bandy Lee (*see id*. ¶ 27); (d) intervened with unidentified Child Abuse Hotline employees (*see id*. ¶ 29); (e) issued and enforced explicit instructions orally and in writing to prevent Plaintiff Patricia Lee from obtaining transcripts and accessing documents in the state court proceedings which Plaintiff unsuccessfully challenged (*see id*. ¶ 35); (f) held an ex parte hearing in which the Judge ordered the transfer of children's custody to the father (*see id*. ¶ 36); (g) ordered the destruction and

10

removal from the record of a report by Dr. Barry Roth opining that Plaintiff Patricia Lee was not mentally ill and was a victim of torture (*see id*. ¶¶ 37-39); (h) conspired with other Defendants and caused Plaintiff Bandy Lee to be arrested on June 22, 2022 on the grounds of Ridge Elementary School (*see id*. ¶¶ 42-46, 54-59); (i) reported to the police that Plaintiff Bandy Lee wrote a letter to the Judge, which the Judge deemed a "terrorist threat", complaining about the Judge's conduct in the state court proceedings, (*see id*. ¶¶ 49-51); (j) ordered Plaintiff Patricia Lee to refrain from commenting about the state court proceedings or publishing such comments, directly or indirectly, (*see id*. ¶¶ 60-62); and (k) issued a ruling on August 31, 2022 that Plaintiff Patricia Lee violated a court order for a psychiatric examination, and entered default against her (*see id*. ¶ 64.).

As a threshold matter, several of these allegations were already reviewed and dismissed based on absolute judicial immunity, among other grounds, by the District Court in 21-cv-20197. (ECF 39-1, Paollilo Cert, Ex. A.) This Court agrees with the analysis and holding of District Court's ruling in 21-cv-20197.[10]

To the extent Plaintiffs allege Judge Gallina-Mecca "colluded" (*see* SAC ¶ 21) with Nissirios to bar Plaintiff Patricia Lee from having custody of the Children, allegations of a collusion or conspiracy do not alter the result that Judge Gallina-Mecca is entitled to immunity for her judicial acts, including awarding custody to the children's father and enforcing the custody order.[11] Likewise, any allegations of supposed "interference" with Plaintiff Patricia Lee's access

---

[10] Judge McNulty found that all of Plaintiff Patricia Lee's allegations pertained to protected judicial acts, and therefore, Plaintiff's claims were barred by the doctrine of absolute judicial immunity and dismissed under Fed. R. Civ. P. 12(b)(6).

[11] *See Owens v. Armstrong*, 171 F. Supp. 3d 316, 330 (D.N.J. 2016) (holding that judicial immunity extends to suits where it is alleged that the judge is acting as part of a conspiracy) (citing *Dennis v. Sparks*, 449 U.S. 24, 26-27 (1980)); *See also Harvey v. Loftus*, 505 F. App'x 87, 90 (3d Cir. 2012) (affirming dismissal of conspiracy claim on judicial immunity grounds); *Montana v. Connor*, 817 F. Supp.2d 440, 450-51 (D.N.J. 2011) (holding that where judge's direct actions are covered by judicial immunity, the judge cannot be held liable for the acts of alleged co-conspirators) (citing *Stankowski v. Farley*, 251 F. App'x 743, 746 (3d Cir. 2007) (holding that judge, alleged to be member of conspiracy with non-judge co-conspirators, is shielded by judicial immunity for his judicial acts, and not subject to liability for the acts of his co-conspirators); *Hookey v. Pelzer*, Civ. No. 08-1733, 2011 WL 743457, * 4

to court records, and "removal" of a report are subject to absolute immunity[12] as a judge's judicial jurisdiction is to be broadly construed, and a judge will not be deprived of immunity even when his actions were erroneous, malicious, or in excess of his authority. *See Gallas v. Supreme Court*, 211 F.3d 760, 769 (3d Cir. 2000).

Furthermore, Plaintiffs Complaint fails to detail facts supporting the assertion that Judge Gallina-Mecca improperly intervened in the child welfare proceedings. Plaintiffs' conclusory pleadings as to the Judge's alleged intervention fail to meet the pleading standards set forth in *Twombly* and *Iqbal*. Judge Gallina-Mecca's actions are covered by absolute judicial immunity.[13] The same is true for Plaintiffs' allegations that "someone at the court" told Child Abuse Hotline employees that Plaintiffs' reports would "go no further." (*See* SAC ¶ 29.) As discussed above, speculative and conclusory allegations fail to meet the pleading standard. Similarly, allegations that Judge Gallina-Mecca "caused" Plaintiff Patricia Lee to be arrested on school property in June 2022 and conspired with Nissirios and School Principal Piacenza to "instigate" her second arrest on school property in September 2022 are likewise conclusory, amounting to bald assertions that fail to meet the pleading standard of *Iqbal* and *Twombly*.[14]

Finally, allegations in the SAC regarding Judge Gallina-Mecca's orders barring Patricia Lee from commenting about the state court action and issuing a ruling that Plaintiff Patricia Lee violated an order for a psychiatric examination and placing her in default in the state court

---

(W.D. Pa., Feb. 1, 2011) ("Because judges must feel free to act without fear of incurring personal liability for their actions in court, judicial immunity remains in force even if the actions are alleged to be... taken as a result of a conspiracy with others.") (internal citations omitted)).

[12] Pursuant to the New Jersey Court Rules, the court has the authority to order that a Family Part case file, or any portion thereof, be sealed. See N.J. Ct. R. 5:3-2(b).

[13] *See Owens v. Armstrong*, 171 F. Supp. 3d 316 (D.N.J. 2016)

[14] The Court recognizes Plaintiffs are proceeding *pro se*, and therefore, generally construes the pleadings liberally and holds them to a less stringent standard than papers filed by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). The Court, however, need not "credit a *pro se* plaintiff's 'bald assertions' or 'legal conclusions.'" *Grohs v. Yatauro*, 984 F. Supp. 2d 273, 282 (D.N.J. 2013) (quoting *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)).

proceedings – are all judicial acts covered by absolute immunity.[15] Indeed, the issuance of gag orders is a judicial act because it is a prerogative of the judge. *See Argen v. Kessler*, No. 18-963, 2018 U.S. Dist. LEXIS 168238, at *27 (D.N.J. Sep. 28, 2018) (quoting *Affeldt v. Carr*, 628 F. Supp. 1097, 1101 (N.D. Ohio 1985)).

In sum, Judge Gallina-Mecca's involvement with Plaintiffs arises out of a family court matter regarding minor children. The allegations within the SAC against Judge Gallina-Mecca are each rooted in Judge Gallina-Mecca's work as the jurist in the case, docket number BER-FM-02-754-21. Plaintiffs' allegations against Judge Gallina-Mecca relate only to decisions, rulings, orders, or actions taken in her capacity as a Superior Court Judge presiding over BER-FM-02-754-21. Despite the litany of allegations, the supposed "non-judicial" actions are either squarely under the purview of judicial acts covered by judicial immunity, or the allegations in the SAC woefully lack the specificity or clarity necessary to conform to the pleading requirements of *Twombly* and *Iqbal*.

As a result, Plaintiffs have not pled any facts to show that Judge Gallina-Mecca's various actions relating to BER-FM-02-754-21 were non-judicial or taken in the absence of jurisdiction. Thus, Plaintiffs' allegations pertain to Judge Gallina-Mecca's actions while performing her judicial duties. Moreover, Plaintiffs' allegations against Judge Gallina-Mecca cannot be construed as actions taken in the clear absence of jurisdiction. As a result, Judge Gallina-Mecca is entitled to absolute judicial immunity; the SAC is dismissed as to Judge Gallina-Mecca on these grounds.

### C. Quasi-Judicial Immunity (Defendant Nissirios)

---

[15] Pursuant to N.J. Stat Ann. § 9:17-53, a court order "may contain any other provision directed against the appropriate party to the proceeding concerning the duty of support . . . or any other matter in the best interests of the child." N.J. Stat Ann. § 9:17-53c.

With respect to Nissirios, the Court also finds that she enjoys the benefit of quasi-judicial immunity. As the Third Circuit has explained:

> A guardian ad litem is a person appointed by the court in custody proceedings to serve as an investigator and gather information about the parents and the children and report back to the court recommending which parent should receive custody.... Characterized as "agents" of the court, *Cok [v. Cosentino*, 876 F.2d 1, 2-3 (1st Cir. 1989)], and "actual functionar[ies] or arm[s] of the court," guardian ad litems aid and inform the court. *Gardner v. Parson*, 874 F.2d 131, 146 (3d Cir. 1989) ("[a] guardian ad litem would be absolutely immune in exercising functions such as testifying in court, prosecuting custody or neglect petitions, and making reports and recommendations to the court in which the guardian acts as an actual functionary or arm of the court, not only in status or denomination but in reality.").

*Hughes v. Long*, 242 F.3d 121, 126 (3d Cir. 2001).

Generally, a plaintiff can make a claim under Section 1983 by showing that (1) the conduct complained of was committed by a state actor and (2) the conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or other laws of the United States. *Schneyder v. Smith*, 653 F.3d 313, 319 (3d Cir. 2011). Plaintiffs' claim fails on the first element because under Section 1983, guardians ad litem are entitled to judicial immunity when acting in their court-appointed role. *Rieco v. Hebe*, 633 F. App'x 567, 569 (3d Cir. 2015) ("A guardian ad litem is absolutely immune from § 1983 liability when acting as 'an integral part[ ] of the judicial process.'" (alteration in original) (quoting *Gardner*, 874 F.2d at 146). Conversely, when acting outside of the judicial process, a guardian ad litem is not a state actor. *Goodson v. Magii*, 797 F. Supp. 2d 624, 637-38 (W.D. Pa. 2011).

Here, Plaintiffs argue that they adequately allege Nissirios acted outside her court appointed GAL role because her actions were "illegal." (ECF 36, Pl. Opp. at 7.) However, Plaintiffs attribution of illegality without well pleaded facts or supported conclusions leave the

14

Court with bald conclusions and bare deductions which are inapposite to the pleading standards set forth in *Iqbal* and *Twombly*. There is nothing in Plaintiffs' SAC which credibly suggests that the actions taken by Nissirios were outside of the scope of her role as GAL. Aside from asserting Nissirios' alleged actions as GAL were illegal (*id*. at 8), Plaintiffs fail to show, first, that those alleged actions were unrelated to Nissirios' role as GAL prosecuting the Family Court Matter, or second, that they were unlawful. That Plaintiffs are dissatisfied with Nissirios's actions as a court-appointed GAL does not change this fact. While the Supreme Court has identified two narrow exceptions to the rule of judicial immunity, neither are appliable here.[16]

Nissirios accordingly enjoys the benefit of quasi-judicial immunity. *See Russell v. Richardson*, 905 F.3d 239, 247 (3d Cir. 2018) (explaining GALs fulfill a quasi-judicial role at the court's request and therefore enjoy the benefit of quasi-judicial immunity). Because Plaintiffs do not properly allege that Nissirios acted outside of the bounds of her role as guardian ad litem or was completely without jurisdiction, the claim fails. Thus, this Court finds that based on the facts alleged, Nissirios is immune from suit.

### D. Dismissal with Prejudice

Defendants Gallina-Mecca and Nissirios respectively contend that the Court should dismiss Plaintiffs' claims with prejudice because they are barred by sovereign immunity and quasi-judicial immunity, such that Plaintiffs cannot sufficiently replead the claims. "A dismissal with prejudice operates as an adjudication on the merits and typically prevents the plaintiff from subsequently litigating his claims in either the original or any other forum." *Papera v. Pa. Quarried Bluestone Co.*, 948 F.3d 607, 610-11 (3d Cir. 2020) (internal quotation omitted). A dismissal

---

[16] Judicial immunity does not extend to non-judicial actions—i.e., actions not taken in a judicial capacity—nor does judicial immunity extend to actions that, although judicial in nature, are taken in the complete absence of all jurisdiction. *Mireles*, 502 U.S. at 11-12.

without prejudice, in contrast, "does not operate as an adjudication upon the merits," therefore, has no preclusive effect. *Id.* Because the Court dismisses the SAC based on sovereign and quasi-judicial immunity as to Judge Gallina-Mecca and Nissirios, there has been no adjudication on the merits. Accordingly, the Court will dismiss Plaintiffs' SAC without prejudice as it pertains to Defendant Gallina-Mecca and Defendant Nissirios. *See Hicks v. N.J.D.O.C.*, No. 16-927, 2017 WL 168917, at *4 (D.N.J. Jan. 17, 2017) (explaining that dismissal on sovereign immunity grounds was without prejudice). But given Plaintiffs' claims, the Court agrees that Plaintiffs cannot plead new facts to avoid sovereign or judicial immunity as to Defendant Gallina-Mecca or Defendant Nissirios. As a result, the Court will not provide Plaintiffs leave to file a third amended complaint.

### IV.  CONCLUSION

For the reasons set forth above, Defendant Gallina-Mecca's Motion to Dismiss (ECF 33) is **GRANTED** and Defendant Nissirios's Motion to Dismiss (ECF 34) are **GRANTED.** An appropriate order follows.

/s/ Jamel K. Semper
**HON. JAMEL K. SEMPER**
**United States District Judge**

Orig:    Clerk
cc:      Leda D. Wettre, U.S.M.J.
         Parties